Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Garrison Drama Limited*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/13/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARRISON DRAMA LIMITED,<br><br>*Plaintiff*<br><br>v.<br><br>263 WMZJ PHONE CASE STORE, BABAITE ALILI 18 STORE, DINGHE ALILI QTPC15 STORE, DINGHE ALILI QTPC16 STORE, FANGJINGYE ALILI PC 47 STORE, FANGJINGYE ALILI PC45 STORE, FANGJINGYE ALILI PC46 STORE, FANGJINGYE ALILI PC49 STORE, FENG04 STORE, FENG06 STORE, FENG10 STORE, FENG16FENG16 STORE, GROWJAA-3C011 STORE, HEIKA ALILI QTPC13 STORE, HEIKA PC12 STORE, HEIKA PC14 STORE, HUAHUAZHENG58 STORE, LEFITTY019 PHONE CASE STORE, LK030 NANA STORE, LUCKY 29 STORE, LUCKY 31 STORE, LUCKY26 STORE, LUOGUXUANTIAN PC82 STORE, NANNAN3 STORE, NICEY CASE STORE, PENGHUWAN A GREAT PHONE CASE 334 STORE, QIANJINGRENLI ALILI PC42 STORE, QIANJINGRENLI ALILI PC43 STORE, QIANJINGRENLI ALILI PC44 STORE, QIU 001 STORE, QIU 003 STORE, QUANYIBAI ALILI PC34 STORE, QUANYIBAI ALILI PC35 STORE, QUANYIBAI ALILI PC38 STORE, SHENGXIANGYU PC54 STORE, | **24-cv-9742 (MKV)**<br><br>**PRELIMINARY INJUNCTION ORDER** |

SHENGXIANGYUN ALILI PC56 STORE, SHENXIANGYUN2 PC52 STORE, SHOP1102373654 STORE, SHOP1103646143 STORE, SHOP1103648078 STORE, SHOP1103730851 STORE, SHOP1103771224 STORE, SHOP1103775141 STORE, SHOP1103779232 STORE, SHOP1103802020 STORE, SHOP1103805155 STORE, SHOP1103808115 STORE, SHOP1103812012 STORE, SHOP1103813010 STORE, SHOP1103813163 STORE, SHOP1103983099 STORE, SHOP1104019049 STORE, SHOP1104092174 STORE, SHOP1104128358 STORE, SHOP1104156293 STORE, SHOP1104186341 STORE, SHOP1104187577 STORE, SHOP1104190759 STORE, SHOP1104196585 STORE, SHOP1104198530 STORE, SONGQUAN ALILI 23 STORE, TAIHUI01 STORE, TIKTOKS PHONE ACCESSORIES STORE, WAN 17 STORE, WUHANLIMI ALILI PC72 STORE, WUHANLIMI ALILI PC76 STORE, WUHANLIMI ALILI PC78 STORE and YUNIAN3 ALILI PC31 STORE,

*Defendants*

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Garrison Drama** | Garrison Drama Limited |
| **Defendants** | 263 WMZJ Phone Case Store, BABAITE ALILI 18 Store, DINGHE ALILI QTPC15 Store, DINGHE ALILI QTPC16 Store, FANGJINGYE ALILI PC 47 Store, FANGJINGYE ALILI PC45 Store, FANGJINGYE ALILI PC46 Store, FANGJINGYE ALILI PC49 Store, Feng04 Store, Feng06 Store, Feng10 Store, Feng16Feng16 Store, Growjaa-3c011 Store, HEIKA ALILI QTPC13 Store, HEIKA PC12 Store, HEIKA PC14 Store, huahuazheng58 Store, Lefitty019 Phone Case Store, LK030 NANA Store, Lucky 29 Store, Lucky 31 Store, Lucky26 Store, LUOGUXUANTIAN PC82 Store, nannan3 Store, Nicey Case Store, Penghuwan A Great Phone Case 334 Store, QIANJINGRENLI ALILI PC42 Store, QIANJINGRENLI ALILI PC43 Store, QIANJINGRENLI ALILI PC44 Store, QIU 001 Store, QIU 003 Store, QUANYIBAI ALILI PC34 Store, QUANYIBAI ALILI PC35 Store, QUANYIBAI ALILI PC38 Store, SHENGXIANGYU PC54 Store, SHENGXIANGYUN ALILI PC56 Store, SHENXIANGYUN2 PC52 Store, Shop1102373654 Store, Shop1103646143 Store, Shop1103648078 Store, Shop1103730851 Store, Shop1103771224 Store, Shop1103775141 Store, Shop1103779232 Store, Shop1103802020 Store, Shop1103805155 Store, Shop1103808115 Store, Shop1103812012 Store, Shop1103813010 Store, Shop1103813163 Store, Shop1103983099 Store, Shop1104019049 Store, Shop1104092174 Store, Shop1104128358 Store, Shop1104156293 Store, Shop1104186341 Store, Shop1104187577 Store, Shop1104190759 Store, Shop1104196585 Store, Shop1104198530 Store, SONGQUAN ALILI 23 Store, Taihui01 Store, TikToks Phone Accessories Store, Wan 17 Store, WUHANLIMI ALILI PC72 Store, WUHANLIMI ALILI PC76 Store, WUHANLIMI ALILI PC78 Store and YUNIAN3 ALILI PC31 Store |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers |

| | |
|---|---|
| | residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Söhngen Dec.** | Declaration of Nicole Söhngen in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Peaky Blinders Products** | Consumer products featuring the Peaky Blinders intellectual property (including the Peaky Blinders Mark), such as art works, cell phone cases, accessories, clothing, bags, hats, whiskey tumblers, pint glasses, glass steins, coffee mugs, a PlayStation game, among many others |
| **Peaky Blinders Mark** | U.S. Trademark Registration No. 6,791,852 for "PEAKY BLINDERS" for a variety of goods in Classes 8, 9, 16, 21, 24, 28 and 41 |
| **Counterfeit Products** | Products bearing or used in connection with the Peaky Blinders Mark, and/or products in packaging and/or containing labels bearing the Peaky Blinders Mark, and/or bearing or used in connection with marks that are confusingly similar to the Peaky Blinders Mark and/or products that are identical or confusingly similar to the Peaky Blinders Products |
| **Counterfeit Products** | Products bearing or used in connection with the Peaky Blinders Mark, and/or products in packaging and/or containing labels bearing the Peaky Blinders Mark, and/or bearing or used in connection with marks that are confusingly similar to the Peaky Blinders Mark and/or products that are identical or confusingly similar to the Peaky Blinders Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |

|  | operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
|---|---|
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and Airwallex (Hong Kong) Limited ("Airwallex") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHEREAS, Plaintiff having moved *ex parte* on December 19, 2024 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on December 20, 2024 ("TRO") which ordered Defendants to appear on January 8, 2025 at 11:30 a.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on December 26, 2024, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO and all papers filed in support of the Application on each and every Defendant;

WHEREAS, on January 8, 2025 at 11:30 a.m., Plaintiff appeared at the Show Cause Hearing, however, none of the Defendants appeared.

## **PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW**

A.   Peaky Blinders, a television show which premiered in September 2013 on BBC in the United Kingdom, and in September 2014 on Netflix in the United States, is a crime drama primarily set in Birmingham, UK in the aftermath of World War I ("Peaky Blinders Show"). The Peaky Blinders show follows the exploits of the fictional Shelby family, who run the powerful Peaky Blinders gang which is loosely based on a little-known historical gang in Birmingham, UK that was in operation from about the 1890s to before World War I and was known as "the Peaky Blinders."

B.   Plaintiff, through its authorized licensees, manufactures, imports, exports, advertises, markets, promotes, distributes, offers for sale and/or sells various enormously popular

consumer products featuring the Peaky Blinders intellectual property (including the Peaky Blinders Mark), such as art works, cell phone cases, accessories, clothing, bags, hats, whiskey tumblers, pint glasses, glass steins, coffee mugs, a PlayStation game, among many others.

C. The Peaky Blinders Show has become wildly successful and popular worldwide, particularly in the United States. Since the Peaky Blinders Show first premiered in 2013, it has attracted millions of viewers, won multiple awards, gained critical acclaim and developed a widespread and a significant fanbase, particularly on social media.

D. Peaky Blinders Show has received widespread press, media, and social media coverage for the past eight (8) years. News stories, reports, reviews, features, press releases and blog and social media posts have appeared in worldwide print and online publications such as: The New York Times, The Wall Street Journal, LA Times, Rolling Stone, Variety, Vox, Mashable, among many others.

E. While Plaintiff has gained significant common law trademark and other rights in its Peaky Blinders Products through its and/or its predecessor's use, advertising and promotion, Garrison Drama also protected its valuable rights by filing for and/or obtaining federal trademark registrations.

F. For example, Garrison Drama is the owner of U.S. Trademark Registration No. 6,791,852 for "PEAKY BLINDERS" for a variety of goods in Classes 8, 9, 16, 21, 24, 28 and 41.[1]

G. The Peaky Blinders Mark is currently in use in commerce in connection with the Peaky Blinders Products. The Peaky Blinders Mark was first used in commerce on or before the date of first use as reflected in the registration attached to the Complaint as Exhibit C.

---

[1] Although the registration certificate for the Peaky Blinders Mark lists Plaintiff's predecessor, Caryn Mandabach Productions Limited, the assignment on file with the United States Patent and Trademark Office (the "USPTO") unequivocally evidences that Plaintiff is in fact the current true and correct owner of the Peaky Blinders Mark.

2

H. Plaintiff, its predecessor and its distribution partners, such as Netflix, have spent substantial time, money, and effort in building up and developing consumer recognition, awareness and goodwill in the Peaky Blinders Show, Peaky Blinders Products and Peaky Blinders Mark.

I. Plaintiff's success is also due to its use of the highest quality materials and processes in making the Peaky Blinders Products, which meet or exceed U.S. standards.

J. As a result of Plaintiff, its predecessor and its distribution partners' marketing and merchandising efforts, the success of the Peaky Blinders Show and quality of its Peaky Blinders Products, its promotions, extensive press and media (including social media) coverage, and word-of-mouth buzz, the Peaky Blinders Show, Peaky Binders Products and Peaky Blinders Mark have become famous and prominently placed in the minds of the public. Members of the public have become familiar with the Peaky Blinders Show, Peaky Blinders Products and Peaky Blinders Mark, and have come to recognize the Peaky Blinders Products and Peaky Blinders Mark and associate them exclusively with Plaintiff.

K. Plaintiff's efforts, the quality of the Peaky Blinder's Products and the word-of-mouth buzz generated by its consumers have made the Peaky Blinders Mark and Peaky Blinders Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Peaky Blinders Mark and Peaky Blinders Products and have come to associate them exclusively with Plaintiff. Garrison Drama has acquired a valuable reputation and goodwill among the public as a result of such associations.

L. Plaintiff has gone to great lengths to protect its interests in the Peaky Blinders Products and the Peaky Blinders Mark. No one other than Plaintiff and its authorized licensees and distributors to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the

Peaky Blinders Mark, or use the Peaky Blinders Mark in connection with goods or services or otherwise, without the express permission of Plaintiff.

M.    Defendants are offering for sale and/or selling Counterfeit Product through Defendants' User Accounts and Merchant Storefronts with AliExpress.

N.    Defendants are not, nor have they ever been, authorized distributors or licensees of the Peaky Blinders Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Peaky Blinders Mark, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Peaky Blinders Marks.

O.    Plaintiff has demonstrated a likelihood of success on its Lanham Act and related common law claims.

P.    As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable harm. *See City of New York v. Lopez*, No. 21 CV 7862 (JPO), 2021 WL 6063839, at *4–5 (S.D.N.Y. Dec. 21, 2021). Specifically:

   a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Peaky Blinders Mark; and

   b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Peaky Blinders Products.

Q.    The balance of potential harm to Defendants of being prevented from continuing to profit from their infringing activities if a preliminary injunction order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and

associated with the Peaky Blinders Mark and to its reputation if the relief granted in the TRO is not continued through the pendency of this action.

  R. Public interest favors issuance of the preliminary injunction order in order to protect Plaintiff's interests in and to its Peaky Blinders Mark, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Peaky Blinders Products.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this action.

2. Issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

    a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

        i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Peaky Blinders Mark and/or marks that are confusingly to, identical to and constitute a counterfeiting or infringement of the Peaky Blinders Mark;

        ii. operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

        iii. directly or indirectly infringing in any manner Plaintiff's Peaky Blinders Mark;

   iv. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Peaky Blinder Mark, to identify any goods or services not authorized by Plaintiff;

   v. using Plaintiff's Peaky Blinder Mark and/or any other marks that are confusingly similar to the Peaky Blinder Mark, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

   vi. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

   vii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit

Products;

viii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

ix. knowingly instructing any other person or business entity in engaging in any of the activities referred to in subparagraphs I(a)(i) through I(a)(viii) above and I(b)(i) and I(c)(i) below.

b) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements, are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

c) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

  i. operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

  ii. instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(a)(i) through I(a)(viii), 1(b)(i) and 1(c)(i) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order.

3. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

 a) within five (5) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

4. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

 a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern

and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control, relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

   i. account numbers;
   ii. current account balances;
   iii. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;
   iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;
   v. any and all deposits and withdrawal during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting

9

        documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    i. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

    ii. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C) of the TRO;

    iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of

        Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

   iv. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of counterfeit Products, or any other products bearing the Peaky Blinders Mark and/or marks that are confusingly similar to, identical to and constitute an infringement of the Peaky Blinders Mark.

5. As sufficient cause has been shown, and pursuant to Rule 4(f) of the Federal Rules of Civil Procedure and Articles 1 and 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), service may be made on, and shall be deemed effective as to Defendants if it is completed by one of the following means:

   a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order, to Defendants' e-mail addresses as identified by AliExpress pursuant to Paragraph V(C) of the TRO or may otherwise be determined.

6. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

b) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Alipay will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com;

c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliExpress will be able to download a PDF copy of this Order via electronic mail to IPR-USTRO@aliexpress.com;

d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and subpoenas@payoneer.com;

e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com; and

f) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $20,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this __8__ day of __January__, 2025, at __5:50__ p.m.
New York, New York

                                                _____
                                                HON. MARY KAY VYSKOCIL
                                                UNITED STATES DISTRICT JUDGE