USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/20/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARRISON DRAMA LIMITED,<br><br>*Plaintiff*<br><br>v.<br><br>263 WMZJ PHONE CASE STORE, BABAITE ALILI 18 STORE, DINGHE ALILI QTPC15 STORE, DINGHE ALILI QTPC16 STORE, FANGJINGYE ALILI PC 47 STORE, FANGJINGYE ALILI PC45 STORE, FANGJINGYE ALILI PC46 STORE, FANGJINGYE ALILI PC49 STORE, FENG04 STORE, FENG06 STORE, FENG10 STORE, FENG16FENG16 STORE, GROWJAA-3C011 STORE, HEIKA ALILI QTPC13 STORE, HEIKA PC12 STORE, HEIKA PC14 STORE, HUAHUAZHENG58 STORE, LEFITTY019 PHONE CASE STORE, LK030 NANA STORE, LUCKY 29 STORE, LUCKY 31 STORE, LUCKY26 STORE, LUOGUXUANTIAN PC82 STORE, NANNAN3 STORE, NICEY CASE STORE, PENGHUWAN A GREAT PHONE CASE 334 STORE, QIANJINGRENLI ALILI PC42 STORE, QIANJINGRENLI ALILI PC43 STORE, QIANJINGRENLI ALILI PC44 STORE, QIU 001 | Civil Case No. 24-cv-9742 (MKV)<br><br>[PROPOSED]<br>1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANTS' MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY<br><br>**FILED UNDER SEAL** |

STORE, QIU 003 STORE, QUANYIBAI ALILI PC34 STORE, QUANYIBAI ALILI PC35 STORE, QUANYIBAI ALILI PC38 STORE, SHENGXIANGYU PC54 STORE, SHENGXIANGYUN ALILI PC56 STORE, SHENXIANGYUN2 PC52 STORE, SHOP1102373654 STORE, SHOP1103646143 STORE, SHOP1103648078 STORE, SHOP1103730851 STORE, SHOP1103771224 STORE, SHOP1103775141 STORE, SHOP1103779232 STORE, SHOP1103802020 STORE, SHOP1103805155 STORE, SHOP1103808115 STORE, SHOP1103812012 STORE, SHOP1103813010 STORE, SHOP1103813163 STORE, SHOP1103983099 STORE, SHOP1104019049 STORE, SHOP1104092174 STORE, SHOP1104128358 STORE, SHOP1104156293 STORE, SHOP1104186341 STORE, SHOP1104187577 STORE, SHOP1104190759 STORE, SHOP1104196585 STORE, SHOP1104198530 STORE, SONGQUAN ALILI 23 STORE, TAIHUI01 STORE, TIKTOKS PHONE ACCESSORIES STORE, WAN 17 STORE, WUHANLIMI ALILI PC72 STORE, WUHANLIMI ALILI PC76 STORE, WUHANLIMI ALILI PC78 STORE and YUNIAN3 ALILI PC31 STORE,

*Defendants*

## GLOSSARY

| Term | Definition |
|---|---|
| Plaintiff or Garrison Drama | Garrison Drama Limited |
| Defendants | 263 WMZJ Phone Case Store, BABAITE ALILI 18 Store, DINGHE ALILI QTPC15 Store, DINGHE ALILI QTPC16 Store, FANGJINGYE ALILI PC 47 Store, FANGJINGYE ALILI PC45 Store, FANGJINGYE ALILI PC46 Store, FANGJINGYE ALILI PC49 Store, Feng04 Store, Feng06 Store, Feng10 Store, Feng16Feng16 Store, Growjaa-3c011 Store, HEIKA ALILI QTPC13 Store, HEIKA PC12 Store, HEIKA PC14 Store, huahuazheng58 Store, Lefitty019 Phone Case Store, LK030 NANA Store, Lucky 29 Store, Lucky 31 Store, Lucky26 Store, LUOGUXUANTIAN PC82 Store, nannan3 Store, Nicey Case Store, Penghuwan A Great Phone Case 334 Store, QIANJINGRENLI ALILI PC42 Store, QIANJINGRENLI ALILI PC43 Store, QIANJINGRENLI ALILI PC44 Store, QIU 001 Store, QIU 003 Store, QUANYIBAI ALILI PC34 Store, QUANYIBAI ALILI PC35 Store, QUANYIBAI ALILI PC38 Store, SHENGXIANGYU PC54 Store, SHENGXIANGYUN ALILI PC56 Store, SHENXIANGYUN2 PC52 Store, Shop1102373654 Store, Shop1103646143 Store, Shop1103648078 Store, Shop1103730851 Store, Shop1103771224 Store, Shop1103775141 Store, Shop1103779232 Store, Shop1103802020 Store, Shop1103805155 Store, Shop1103808115 Store, Shop1103812012 Store, Shop1103813010 Store, Shop1103813163 Store, Shop1103983099 Store, Shop1104019049 Store, Shop1104092174 Store, Shop1104128358 Store, Shop1104156293 Store, Shop1104186341 Store, Shop1104187577 Store, Shop1104190759 Store, Shop1104196585 Store, Shop1104198530 Store, SONGQUAN ALILI 23 Store, Taihui01 Store, TikToks Phone Accessories Store, Wan 17 Store, WUHANLIMI ALILI PC72 Store, WUHANLIMI ALILI PC76 Store, WUHANLIMI ALILI PC78 Store and YUNIAN3 ALILI PC31 Store |
| AliExpress | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| Epstein Drangel | Epstein Drangel LLP, counsel for Plaintiff |

| New York Address | 244 Madison Ave, Suite 411, New York, New York 10016 |
|---|---|
| Complaint | Plaintiff's Complaint |
| Application | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| Söhngen Dec. | Declaration of Nicole Söhngen in Support of Plaintiff's Application |
| Nastasi Dec. | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| Peaky Blinders Products | Consumer products featuring the Peaky Blinders intellectual property (including the Peaky Blinders Mark), such as art works, cell phone cases, accessories, clothing, bags, hats, whiskey tumblers, pint glasses, glass steins, coffee mugs, a PlayStation game, among many others |
| Peaky Blinders Mark | U.S. Trademark Registration No. 6,791,852 for "PEAKY BLINDERS" for a variety of goods in Classes 8, 9, 16, 21, 24, 28 and 41 |
| Counterfeit Products | Products bearing or used in connection with the Peaky Blinders Mark, and/or products in packaging and/or containing labels bearing the Peaky Blinders Mark, and/or bearing or used in connection with marks that are confusingly similar to the Peaky Blinders Mark and/or products that are identical or confusingly similar to the Peaky Blinders Products |
| Infringing Listings | Defendants' listings for Counterfeit Products |
| User Accounts | Any and all websites and any and all accounts with online marketplace platforms such as AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| Merchant Storefronts | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| Defendants' Assets | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| Defendants' Financial Accounts | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant |

| | |
|---|---|
| | Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and Airwallex (Hong Kong) Limited ("Airwallex") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

The Court has considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' allegedly intentional and willful offerings for sale and/ or sales of Counterfeit Products (the "Application"). A complete list of Defendants is attached hereto as **Schedule A**, which also includes links to Defendants' Merchant Storefronts and Infringing Listings. Having reviewed the Application, Declarations of Nicole Söhngen and Gabriela N. Nastasi, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW[1]

**Plaintiff's allegations are assumed to be true solely for the purpose of adjudicating its Application.**

1. Peaky Blinders, a television show which premiered in September 2013 on BBC in the United Kingdom, and in September 2014 on Netflix in the United States, is a crime drama primarily set in Birmingham, UK in the aftermath of World War I ("Peaky Blinders Show"). The Peaky Blinders show follows the exploits of the fictional Shelby family, who run the powerful Peaky Blinders gang which is loosely based on a little-known historical gang in Birmingham, UK that was in operation from about the 1890s to before World War I and was known as "the Peaky Blinders."

2. Plaintiff, through its authorized licensees, manufactures, imports, exports, advertises, markets, promotes, distributes, offers for sale and/or sells various enormously popular consumer products featuring the Peaky Blinders intellectual property (including the Peaky

---

[1] Where a defined term is referenced but not defined herein, the defined term should be understood as it is defined in the Glossary.

Blinders Mark), such as art works, cell phone cases, accessories, clothing, bags, hats, whiskey tumblers, pint glasses, glass steins, coffee mugs, a PlayStation game, among many others.

3. The Peaky Blinders Show has become wildly successful and popular worldwide, particularly in the United States. Since the Peaky Blinders Show first premiered in 2013, it has attracted millions of viewers, won multiple awards, gained critical acclaim and developed a widespread and a significant fanbase, particularly on social media.

4. Peaky Blinders Show has received widespread press, media, and social media coverage for the past eight (8) years. News stories, reports, reviews, features, press releases and blog and social media posts have appeared in worldwide print and online publications such as: The New York Times, The Wall Street Journal, LA Times, Rolling Stone, Variety, Vox, Mashable, among many others.

5. While Plaintiff has gained significant common law trademark and other rights in its Peaky Blinders Products through its and/or its predecessor's use, advertising and promotion, Garrison Drama also protected its valuable rights by filing for and/or obtaining federal trademark registrations.

6. For example, Garrison Drama is the owner of U.S. Trademark Registration No. 6,791,852 for "PEAKY BLINDERS" for a variety of goods in Classes 8, 9, 16, 21, 24, 28 and 41.[2]

7. The Peaky Blinders Mark is currently in use in commerce in connection with the Peaky Blinders Products. The Peaky Blinders Mark was first used in commerce on or before the

---

[2] Although the registration certificate for the Peaky Blinders Mark lists Plaintiff's predecessor, Caryn Mandabach Productions Limited, the assignment on file with the United States Patent and Trademark Office (the "USPTO") evidences that Plaintiff is in fact the current true and correct owner of the Peaky Blinders Mark.

date of first use as reflected in the registration attached to the Complaint as Exhibit C.

8. Plaintiff, its predecessor and its distribution partners, such as Netflix, have spent substantial time, money, and effort in building up and developing consumer recognition, awareness and goodwill in the Peaky Blinders Show, Peaky Blinders Products and Peaky Blinders Mark.

9. Plaintiff's success is also due to its use of the highest quality materials and processes in making the Peaky Blinders Products, which meet or exceed U.S. standards.

10. As a result of Plaintiff, its predecessor and its distribution partners' marketing and merchandising efforts, the success of the Peaky Blinders Show and quality of its Peaky Blinders Products, its promotions, extensive press and media (including social media) coverage, and word-of-mouth buzz, the Peaky Blinders Show, Peaky Binders Products and Peaky Blinders Mark have become famous and prominently placed in the minds of the public. Members of the public have become familiar with the Peaky Blinders Show, Peaky Blinders Products and Peaky Blinders Mark, and have come to recognize the Peaky Blinders Products and Peaky Blinders Mark and associate them exclusively with Plaintiff.

11. Plaintiff's efforts, the quality of the Peaky Blinder's Products and the word-of-mouth buzz generated by its consumers have made the Peaky Blinders Mark and Peaky Blinders Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Peaky Blinders Mark and Peaky Blinders Products and have come to associate them exclusively with Plaintiff. Garrison Drama has acquired a valuable reputation and goodwill among the public as a result of such associations.

12. Garrison Drama has gone to great lengths to protect its interests in the Peaky Blinders Products and the Peaky Blinders Mark. No one other than Garrison Drama and its authorized licensees and distributors is entitled/authorized to manufacture, import, export, advertise, offer for

3

sale, or sell any goods utilizing the Peaky Blinders Mark, or use the Peaky Blinders Mark in connection with goods or services or otherwise, without the express permission of Garrison Drama.

13. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying and/or offering for sale Counterfeit Products through Defendants' User Accounts and Merchant Storefronts with AliExpress (see **Schedule A** for links to Defendants' Merchant Storefronts and Infringing Listings).

14. Defendants are not, nor have they ever been, authorized distributors or licensees of the Peaky Blinders Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Peaky Blinders Mark, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Peaky Blinders Mark.

15. Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

16. As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

    a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Peaky Blinders Mark;

    b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Peaky Blinders Products; and

c. Plaintiff has well-founded fears that if they proceed on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Peaky Blinders Mark, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Peaky Blinders Mark, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Peaky Blinders Mark and records relating thereto that are in their possession or under their control and/or (iv) open new User Accounts and Merchant Storefront under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence.

17. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Peaky Blinders Mark and to its reputation if a temporary restraining order is not issued.

18. Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Peaky Blinders Mark, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit

Products as Peaky Blinders Products.

19. Plaintiff has not publicized its request for a temporary restraining order in any way.

20. Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants.

21. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Peaky Blinders Mark. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants' Merchant Storefronts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) and I(C)(1) of this Order, respectively, before requiring service on Defendants.

22. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

6

## I.    Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for ~~fourteen (14)~~ twenty-eight (28)* days from the date of this order, and for such further period as may be provided by order of the Court:

1)   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Peaky Blinders Mark and/or marks that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Peaky Blinders Mark;

2)   operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

3)   directly or indirectly infringing in any manner Plaintiff's Peaky Blinders Mark;

4)   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Peaky Blinder Mark to identify any goods or service not authorized by Plaintiff;

5)   using Plaintiff's Peaky Blinder Mark and/or any other marks that are confusingly similar to the Peaky Blinder Mark on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

6)   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed,

\* The Court finds, pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, that good cause exists to extend this temporary restraining order for a duration of twenty-eight days because of the number of upcoming holidays occurring during the typical fourteen day period and because in the Court's experience, service in this type of case is complex and unlikely to be

displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

7)      secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

8)      effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

9)      knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8) above and I(B)(1) and I(C)(1) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging

in any of the following acts or omissions for ~~fourteen (14)~~ **twenty-eight (28)** days from the date of this order, and for such further period as may be provided by order of this Court:

    1)    secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

C.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that immediately upon receipt of service of this Order, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions for ~~fourteen (14)~~ **twenty-eight (28)** days from the date of this order, and for such further period as may be provided by order of this Court:

    1)    operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

    2)    instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8), I(B)(1) and I(C)(1) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order.

## II.    Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A.  Defendants are hereby ORDERED to show cause before this Court in Courtroom __18C__ of the United States District Court for the Southern District of New York at 500 Pearl Street/40 Foley Square, New York, New York on **January 8, 2025 at 11:30 AM.**

or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court, **sent by email to VyskocilNYSDChambers@nysd.uscourts.gov**, and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 1250, New York, NY 10165, Attn: Jason M. Drangel on or before **December 27, 2024.** Plaintiff shall file any Reply papers on or before **January 2, 2025.**

C. IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

## III.    Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and Defendants' Assets and shall provide written confirmation of such attachment to Plaintiff's counsel.

## IV.    Order Authorizing Bifurcated and Alternative Service by Electronic Means

A. IT IS FURTHER ORDERED pursuant to ~~Fed. R. Civ. P. 4(f)(3)~~,* as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

\* Rule 4(f) of the Federal Rules of Civil Procedure and Articles 1 and 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention")

1)      delivery of: (i) PDF copies of this Order together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses to be determined after having been identified by AliExpress pursuant to **Paragraph V(C)**.

B.  ~~IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.~~

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A) and V(C)** of this Order.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that the Clerk of the Court shall issue a single original summons directed to all Defendants as listed in an attachment to the summons that will apply to all Defendants.

E.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

1)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

11

2)  delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Alipay will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com;

3)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliExpress will be able to download a PDF copy of this Order via electronic mail to IPR-USTRO@aliexpress.com;

4)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and subpoenas@payoneer.com;

5)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com.

6)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com.

## V.   Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)  Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a.  their true name and physical address;

   b.  the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User

Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own and/or operate;

c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

d. the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

e. the steps taken by each Defendant, or other person served to comply with **Section I**, above.

2)  Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3)  Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within ~~five (5)~~ **seven (7)** days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for

Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

**seven (7)**

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within ~~five (5)~~ days of receipt of service of this Order, the Third Party Service Providers served with this Order shall identify any and all of Defendants' User Accounts and Merchant Storefronts, and provide Plaintiff's counsel with a summary report containing account details for any and all User Accounts and Merchant Storefronts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   a. account numbers;

   b. current account balances;

   c. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

d. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

e. any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

f. any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

a. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

15

b.  the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

c.  the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

d.  Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Peaky Blinders Mark and/or marks that are confusingly similar to, identical to and constitute an infringement of the Peaky Blinders Mark.

## VI.    Security Bond

A.  IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of twenty-thousand Dollars ( $20,000 ) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.    Sealing Order

A.  IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Nicole Söhngen and Gabriela N. Nastasi in support thereof and exhibits attached thereto, and this Order shall remain sealed

16

until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(C)** of this Order.

**SO ORDERED.**

SIGNED this **20th** day of **December** , 2024, at **1:30** **p** .m.

HON. MARY KAY VYSOCIL
UNITED STATES DISTRICT JUDGE